JOSEPH GORDON, Appellant, v. FRANKLIN CASEY, Appellee.

APPEAL FROM ST. CLAIR.

The election law of 1845 is intended to apply to the election of presidential electors as well as to that of State officers; and bets made on such elections are void.

FRANKLIN CASEY filed his declaration in debt in the St. Clair Circuit Court, on a note of which the following is a copy:

"$160—On or before the first day of March eighteen hundred and fifty three I promise to pay Franklin Casey or order one hundred and sixty dollars provided Franklin A Pierce is elected President of the United States if not this obligation to be null and void for value received.          JOSEPH GORDON,

Paps House October 11th 1852.                              F. M. GORDON."

Plea of general issue, and notice to the effect that the defendants would give in evidence that the note sued on was founded on a bet between said Casey and Joseph Gordon, on the result of a presidential election not yet held, and that the parties thereto were citizens of Illinois and entitled to vote at such election.

The cause was tried by the court, SNYDER, Judge, presiding, by consent, without a jury.

On the trial, the plaintiff below introduced in evidence the note above copied.

The parties then introduced a statement of facts, in writing, which was agreed by the parties to be taken in evidence in the cause, and of which the following is a true copy, to wit:

" The parties being together at Illinoistown, St. Clair county, the plaintiff had a horse which he held and was offering to sell at $80. Defendant, Joseph Gordon, proposed giving plaintiff $160 for the horse, provided Pierce was elected President of the United States of America. Plaintiff agreed to the proposition and delivered the horse to said Gordon, whereupon and in pursuance thereof, said Gordon and his co-defendant executed the note and delivered the same to plaintiff. The said plaintiff and defendants were, at the time of the above transaction, residents and voters in the State of Illinois, where the same took place, and at the election at which Pierce was elected. That Pierce was elected President, as in the plaintiff's declaration alleged."

Thereupon the court gave judgment for plaintiff below for $223 and costs, to which defendants excepted. Defendants next moved the court for a new trial, which motion was overruled by the court. Leave was given Joseph Gordon to appeal.

J. Baker, for Appellant.

Tanner & Casey, and R. S. Bond, for Appellee.

Caton, C. J.  We shall not waste time in attempting to prove that this was a wager or bet, depending on the result of the presidential election. It is as much a bet, and as manifestly so, as if one party had placed his horse, and the other eighty dollars in money, in the hands of the stake-holder, to be delivered to the party winning the bet. Indeed the conditions of this wager are in the precise terms of the 52nd section of the election law of 1845, viz: " Or if any person shall agree to pay any other person any money, property or other valuable thing, in the event that any election as aforesaid shall result in one way," etc.

The important question is, was this bet void, as being in violation of our statute, or the common law, or against public policy ? We think it was void upon all these grounds, but propose to confine what we have to say on the subject on this occasion to the first. The section of the statute above referred to, provides : " If any person shall at any time hereafter bet or wager any money, or other valuable thing, upon the result of any election which may be held under the constitution or laws of this State, or shall bet or wager money, property, or other valuable thing, upon the number of votes which may be given to any one or more persons at any election held as aforesaid, or upon who will receive the greatest number of votes at any such election," etc., " such person shall be liable to indictment," etc. It is

admitted if this bet was in violation of this law, the note is void, and the action upon it cannot be maintained. This bet was upon the result of a pending election for a President of the United States. Was that an election held under the laws of this State, within the meaning of this section? Was this bet within the mischief intended to be provided against by the enactment of this law? We can give but an affirmative answer to both of these questions. It is true, as has been argued, that that election was not confined to this State, nor was it necessarily determined by the result in this State, nor does the language of the act necessarily thus confine it. That it was the intention of the legislature in enacting this section, to make it applicable to presidential elections, is manifest from the very position it occupies, and the context. It is the last section of an act, the very first of which provides for the election of presidential electors. The election law of 1845, first provides for the election of electors for President and Vice President of the United States, and then proceeds to provide for the election of State officers, and concludes the whole with this penal section. Is it to be presumed that the legislature did not intend it to apply to all elections therein provided for? Can it be that they intended to secure the purity of the election for State officers, and intended to leave the election of President and Vice President open to the corrupting influence of bets and wagers among the electors? This would be a discrimination not to be imputed to the legislature, unless it is manifest that such was their intention. There is the same high motive for protecting the one as the other. The evil is as great in the one as the other. We are satisfied that it is clearly within the spirit and meaning of the law, and is by no means forbidden by its letter, but is strictly within it.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*